Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL IX

| COOPERATIVA DE AHORRO Y CRÉDITO PADRE MCDONALD  Apelada  V.  ESTADO LIBRE ASOCIADO DE PUERTO RICO  Apelante | KLAN202500460 | Apelación procedente del Tribunal de Primera Instancia, Sala Superior de Ponce  Caso Núm.: PO2024CV00935  Sobre: Impugnación de Confiscación |
|---|---|---|

Panel integrado por su presidente, el Juez Rodríguez Casillas, el Juez Marrero Guerrero y el Juez Campos Pérez.

Marrero Guerrero, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 21 de julio de 2025.

Comparece ante nos el Estado Libre Asociado de Puerto Rico (ELA), representado por la Oficina del Procurador General (OPG o apelante) en solicitud de que revisemos una *Sentencia* emitida el 25 de febrero de 2025 por el Tribunal de Primera Instancia, Sala Superior de Ponce (TPI).[1] Mediante el referido dictamen, el TPI declaró Ha Lugar la *Demanda* de impugnación de confiscación y la *Moción de Sentencia Sumaria* que presentó la Cooperativa de Ahorro y Crédito Padre McDonald (Cooperativa o apelada). Por ello, decretó nula la confiscación de un automóvil, por entender que el ELA no lo notificó dentro del término jurisdiccional de treinta (30) días desde que se ocupó, a tenor con la *Ley Uniforme de Confiscaciones*, Ley Núm. 119-2011, según enmendada, 34 LPRA sec. 1724 *et seq.* (*Ley de Confiscaciones*).

Por los fundamentos que expondremos a continuación, se revoca la determinación apelada.

---

[1] Apéndice de *Escrito de Apelación*, Anejo I, págs. 1-18. Archivada y notificada el 28 de febrero de 2025.

**I.**

Del expediente surgió que los días 13 y 26 de diciembre de 2023, el Negociado de la Policía de Puerto Rico (NPPR) emitió sendos *Informes de Incidentes* en los que expuso que el 11 de diciembre de 2023, se informó la ocupación de un automóvil Honda Passport del año 2022 que se utilizó el 4 de diciembre de 2023 en la comisión de una apropiación ilegal en la tienda Home Depot de Ponce.[2] Se expuso que el agente del NPPR suscribiente continuaría la investigación.

Tras varios trámites atinentes al encauzamiento criminal del señor Eugenio J. Cámara Vázquez por los aludidos hechos delictivos, el 11 de marzo de 2024, la Junta de Confiscaciones del Departamento de Justicia envió unas cartas a la Cooperativa, la señora Elbannette Rodríguez Ortiz, el señor Rubén C. López Dekony y al señor Cámara Vázquez.[3] En estas, informó que se confiscó el vehículo registrado a nombre de la señora Rodríguez Ortiz. Comunicó que el mismo se tasó en $31,000.00. Además, manifestó que la ocupación ocurrió el 4 de diciembre de 2023 para obtener evidencia física e investigar los hechos cometidos en igual fecha, en violación a los Artículos 182 y 184 del Código Penal de Puerto Rico, 33 LPRA secs. 5252 y 5256. Explicó que el 12 de enero de 2024, el NPPR expidió *la Certificación de Inspección de Vehículos de Motor y Equipo Pesado* y que el 27 de febrero de 2024, se emitió la *Orden de Confiscación.*[4] A su vez, comunicó que la confiscación podía impugnarse dentro de los treinta (30) días desde que se recibió la notificación.

---

[2] *Íd.,* Anejo V, págs. 31-36.
[3] *Íd.,* Anejo IX, págs. 48-59.
[4] De la referida *Orden de Confiscación* surgió que el señor Cámara Vázquez era el conductor del vehículo objeto de la confiscación.

Posteriormente, el 8 de abril de 2024, la Cooperativa, la señora Rodríguez Ortiz[5] y Óptima Seguros[6] presentaron una *Demanda* por impugnación de confiscación y ocupación en contra del ELA, el Superintendente del NPPR y el Secretario de Justicia.[7] En síntesis, impugnaron la confiscación del automóvil y su valor de tasación, más solicitaron declarar nulo el proceso, en vista de que el ELA notificó la confiscación luego de transcurrir los términos dispuestos en la *Ley de Confiscaciones*, *supra*, y sin incluir a todas las personas requeridas. Asimismo, apuntaron que la propiedad confiscada no se utilizó en relación a, ni fue el resultado o el producto de la comisión de un delito. Alegaron también que eran terceros ajenos a los hechos delictivos que motivaron la confiscación, por lo que no debían ser privados de su propiedad. Ante ello, solicitaron la devolución del vehículo confiscado o de su precio real, entre otros remedios legales.

El 9 de mayo de 2024, el ELA presentó una *Contestación a Demanda*.[8] Entre otros, alegó que los demandantes no eran terceros inocentes y que procedía la desestimación de la *Demanda* por falta de legitimación activa al no demostrarse fehacientemente la titularidad sobre la propiedad confiscada ni acreditarse el interés en la misma. Además, adujo que el acto de confiscación se realizó como parte de un deber ministerial, de buena fe y dentro de la autoridad conferida por la *Ley de Confiscaciones*, *supra*, en atención al debido proceso de ley e igual protección de las leyes, garantizados constitucionalmente.

Luego de varias incidencias procesales, el 21 de septiembre de 2024, la Cooperativa presentó una *Moción de Sentencia Sumaria*.[9] En esta, solicitó declarar Ha Lugar la *Demanda* y nula la confiscación,

---

[5] Por virtud de una *Sentencia Parcial* emitida el 13 de enero de 2025 y notificada el 14 de enero de 2025, el Foro Primario declaró el desistimiento voluntario sin perjuicio de la señora Rodríguez Ortiz por razón de su fallecimiento. *Íd.*, Anejo XXI, págs. 133-134.
[6] Mediante una *Sentencia Parcial* emitida el 24 de junio de 2024 y notificada el 28 de junio de 2024, el TPI autorizó el desistimiento voluntario sin perjuicio de Óptima Seguros. *Íd.*, Anejo XIV, págs. 75-76.
[7] *Íd.*, Anejo X, págs. 60-64.
[8] *Íd.*, Anejo XII, págs. 66-71.
[9] *Íd.*, Anejo XVII, págs. 82-82.

por haberse notificado posterior a transcurrir el término jurisdiccional establecido en el Artículo 13 de la *Ley de Confiscaciones, supra,* sec. 1724j. Por ello, indicó que los únicos asuntos litigiosos en este caso eran si la confiscación se notificó una vez venció el término jurisdiccional y si los delitos que la motivaron permitían que el vehículo se confiscara.

El 15 de octubre de 2024, el ELA presentó una *Moción en Oposición a Solicitud de Sentencia Sumaria.*[10] En resumen, planteó que la notificación de la confiscación se realizó oportunamente y conforme a derecho. Al respecto, arguyó que, toda vez que el automóvil se incautó para realizar una investigación de índole penal, disponía de un término excepcional de noventa (90) días para investigar y expedir una *Orden de Confiscación.* Precisó que, a partir de tal fecha, comenzó a transcurrir el término de treinta (30) días para notificar la confiscación. De esta manera, señaló que la investigación y la *Orden de Confiscación* se gestionaron dentro de los cuarenta y siete (47) días desde que se ocupó el vehículo y, a los catorce (14) días, se notificó la confiscación a las partes con interés. Seguido, puntualizó que el término jurisdiccional general de treinta (30) días a partir de la ocupación no era aplicable a este caso, sino el término excepcional cuando existía una investigación de índole criminal.

De otra parte, el apelante alegó que el vehículo que motivó la confiscación no se ocupó el 4 de diciembre de 2023, sino el 11 de diciembre de 2023. Según expuso, no fue hasta esta última fecha que un agente del NPPR ocupó el automóvil y encontró en su interior una mercancía objeto de otros incidentes de apropiación ilegal en distintos establecimientos. Relató que, a raíz de lo anterior, el 14 de diciembre de 2023, se radicaron cargos en ausencia contra el señor Cámara Vázquez, quien fue arrestado el día 21 de igual mes y año.

---

[10] *Íd.,* Anejo XVIII, págs. 93-125.

Tras dar por sometido el asunto, el 25 de febrero de 2025, el TPI emitió una *Sentencia* declarando Ha Lugar la *Moción de Sentencia Sumaria* y la *Demanda* presentada por la Cooperativa.[11] El Foro Primario formuló las siguientes determinaciones de hechos, de las cuales ambas partes estipularon de la una (1) a la ocho (8) en el *Informe de Conferencia con Antelación a Juicio*:

1.  El Estado Libre Asociado ocupó el vehículo marca Honda, modelo Passport del año 2022 con número de tablilla KCW-608 por alegadamente haber sido utilizado en violación a los Artículos 182 y 184 del Código Penal de Puerto Rico en Ponce, Puerto Rico.
2.  La unidad fue tasada en $31,000.00.
3.  La Orden de Confiscación se emitió el día 27 de febrero de 2024.
4.  La *Notificación de la Confiscación* se realizó mediante carta fechada el 11 de marzo de 2024 y depositada en el correo postal el 12 de marzo de 2024.
5.  El Negociado de Investigaciones [de] Vehículos Hurtados emitió [un] Certificado de Inspección el 12 de enero de 2024.
6.  La Cooperativa de Ahorro y Crédito Padre McDonald tiene un gravamen inscrito en el Registro del DTOP.
7.  La ocupación del vehículo de motor ocurrió el 11 de diciembre del 2023.
8.  De la *Orden de Confiscación* ni de la carta de notificación surge imputación alguna de que el vehículo fue incautado o retenido por motivos investigativos.
9.  Según surge del Informe de Incidente, el 11 de diciembre de 2023[,] se ocupó el vehículo marca Honda, modelo Passport con tablilla KCW-608 del año 2022, debido a que el mismo fue utilizado para cometer el delito de apropiación ilegal en la tienda Home Depot en Ponce.
10. El vehículo se ocupó en posición del Sr. Rubén C. López [Dekony] y se procedió a realizar ese mismo día el Inventario [del] vehículo.
11. El 14 de diciembre de 2023, se presentaron cargos en ausencia contra el Sr. Eugenio Cámara Vázquez por violación al Artículo 182 del Código Penal y el Artículo 184 D (menos grave) del Código Penal, por los hechos que motivaron la confiscación. Ese mismo día, el Hon. Ángel Candelario Cáliz, luego de evaluar la prueba, determinó Causa Probable y se emitió una Orden de Arresto con una fianza de $50,000.
12. El Sr. Eugenio Cámara Vázquez fue arrestado el 21 de diciembre de 2023, y se diligenció la Orden de Arresto ante la Hon. Mar[í]a T. Hernández Calzada, quien al no prestar la fianza[,] fue ingresado en el Centro de Ingreso 676 en Ponce.
13. En documento con fecha del 29 de febrero de 2024 dirigido al Director de la Junta de Confiscaciones y suscrito por el Tte. II Luis A[.] Velázquez Mercado, Placa número 7-16286, el cual indica como asunto: ENTREGA "VEHÍCULO TARDE" se indicó que el vehículo objeto del presente caso se entregó tardíamente porque el agente que ocupó el mismo, José A. Santiago González, con Placa número 19489, tenía problemas familiares.

---

[11] *Íd.*, Anejo I, págs. 1-18. Archivada y notificada el 28 de febrero de 2025.

14. La parte demandada no presentó evidencia sobre una investigación realizada desde la fecha de la ocupación el 11 de diciembre de 2023, hasta la fecha en que se expidió la Orden de Confiscación el 27 de febrero de 2024.

El Foro *a quo* dispuso que, bajo la norma general, la notificación de confiscación emitida el 12 de marzo de 2024 ocurrió fuera del término jurisdiccional. Pues, estableció que desde el 11 de diciembre de 2023, fecha de ocupación del automóvil, hasta el 27 de febrero de 2024 que se emitió la *Orden de Confiscación*, nunca informó oportunamente a los demandantes sobre que el trámite confiscatorio se podía extender para fines investigativos, a tenor con la última modalidad del Artículo 13 de la *Ley de Confiscaciones*, *supra*, sec. 1724j. A su vez, indicó que la carta de notificación de confiscación disponía que "El vehículo se ocupó y se retuvo para investigación y evidencia física por los hechos relacionados al caso", sin consignar claramente los fines investigativos que provocaron la retención de la propiedad ni la fecha en que la investigación culminó. Por ello, apuntó que al ELA le correspondía presentar evidencia sobre la conexión entre la razón inicial para intervenir y el motivo para retener la propiedad. Expresó que no era suficiente aludir a una investigación en términos vagos y generalizados.

De otra parte, el TPI precisó que del *Certificado de Inspección de Vehículos de Motor y Equipo Pesado* no surgió que el vehículo tenía una condición que infringiera la *Ley para la Protección de la Propiedad Vehicular*, Ley Núm. 8 de 5 de agosto de 1987, según enmendada, 9 LPRA sec. 3201 *et seq.*, ni que ameritara una investigación ulterior. Igualmente, especificó que la *Orden de Confiscación* no detalló la necesidad de retener el vehículo para realizar una investigación. En particular, estableció que en el documento "Entrega Vehículo Tarde" que el teniente Luis A. Velázquez Mercado suscribió el 29 de febrero de 2024, se indicó que el vehículo se entregó tardíamente debido a problemas familiares del agente que lo ocupó. El TPI puntualizó que

lo anterior no equivalía a un proceso investigativo relacionado al automóvil ni cumplía con la *Ley de Confiscaciones, supra.*

Por lo anterior, el Foro Primario estableció que, al transcurrir más de treinta (30) días desde la fecha de la ocupación del automóvil sin notificar la confiscación, procedía declarar su nulidad. Manifestó que el ELA no justificó su tardanza ni explicó la investigación efectuada y su nexo con el vehículo, tal como el Tribunal Supremo lo requirió en el caso *Reliable Financial v. ELA*, 197 DPR 289 (2017).

Inconforme, el 14 de marzo de 2025, el apelante presentó una *Moción de Reconsideración*, en la que reiteró que en este caso era aplicable el término de noventa (90) días para culminar una investigación relacionada con una acción penal y gestionar la *Orden de Confiscación*, además del posterior término de treinta (30) días para notificar la confiscación.[12] Expresó que informó los motivos investigativos para retener la propiedad al advertir que "el vehículo se ocupó y se retuvo para investigación y evidencia física por los hechos relacionados al caso". Precisó que requerir revelar toda la investigación era un acto oneroso que limitaría su labor investigativa. De otra parte, planteó que el documento "Entrega Vehículo Tarde" constituía una prueba de referencia inadmisible por no estar firmado por el agente que ocupó el automóvil ni estar relacionado a la notificación de la confiscación.

El 24 de marzo de 2025, el apelado presentó una *Oposición a Moción de Reconsideración*, en la que reiteró que el ELA hizo una mención genérica a una investigación, sin acreditar bajo juramento su motivo, su relevancia con el vehículo confiscado ni su resultado.[13]

El 25 de marzo de 2025, el TPI emitió una *Resolución* en la que declaró No Ha Lugar a la solicitud de reconsideración del ELA.[14]

---

[12] *Íd.*, Anejo II, págs. 19-25.
[13] *Íd.*, Anejo III, págs. 26-28.
[14] *Íd.*, Anejo IV, págs. 29-30.

En desacuerdo con el dictamen, el 22 de mayo de 2025, la OPG presentó el recurso de apelación que nos ocupa, en el que señaló que el Foro Primario incurrió en el siguiente error:

ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL CONCEDER LA MOCIÓN DISPOSITIVA PRESENTADA POR LA PARTE APELADA, A PESAR DE QUE LA PRUEBA DOCUMENTAL DEMOSTRÓ QUE EL ESTADO NOTIFICÓ LA CONFISCACIÓN DEL VEHÍCULO CONFORME AL ARTÍCULO 13 DE LA LEY UNIFORME DE CONFISCACIONES, ANTE LA NECESIDAD DE RETENER EL VEHÍCULO DE MOTOR PARA UNA INVESTIGACIÓN PARALELA Y AL NO TOMAR EN CUENTA QUE, COMO MÍNIMO, EXISTE CONTROVERSIA DE HECHOS SOBRE SI EL VEHÍCULO FUE OCUPADO PARA FINES INVESTIGATIVOS EN CUMPLIMIENTO CON ESE ARTICULADO.

En esencia, el apelante destacó que cumplió cabalmente con la notificación de la confiscación al apelado, ya que en el *Inventario de Vehículo* se indicó que el automóvil se ocupó para investigación y que en los *Informes de Incidentes* del 13 y 26 de diciembre de 2023 se expresó que el vehículo se ocupó para continuar la investigación referente al incidente de apropiación ilegal ocurrido el 4 de diciembre de 2023 en la tienda Home Depot de Ponce. Además, expresó que como parte de la investigación dentro del vehículo se encontró la mercancía objeto de otros incidentes de apropiación ilegal. Ante ello, sostuvo que contaba con el término de noventa (90) días que vencía el 10 de marzo de 2024 para concluir la pesquisa, ya que estaba realizando una investigación de naturaleza criminal que vinculaba el vehículo ocupado. Indicó que a los setenta y ocho (78) días de la ocupación del vehículo se concluyó la investigación y se emitió la *Orden de Confiscación*, fecha a partir del cual se tardó catorce (14) días para notificar la confiscación, dentro del término de treinta (30) días dispuestos en la *Ley de Confiscaciones, supra*.

Asimismo, la OPG planteó que el TPI erró al establecer que en la notificación de confiscación se realizó una aseveración general sin consignar claramente los fines investigativos por los que se ocupó la propiedad. Al respecto, esgrimió que de la referida notificación surgió

información más que suficiente para informar que el vehículo se ocupó para una investigación al exponer lo siguiente:

> La ocupación se llevó a cabo el 4 de diciembre de 2023, y obedeció a que el 4 de diciembre de 2023, se utilizó en violación a los Arts. 182 y 183 [del Código Penal], en Ponce, Puerto Rico. El vehículo se ocupó y se retuvo para investigación y evidencia física por hechos [relacionados] al caso.

Por lo anterior, el apelante especificó que no procedía la nulidad de la confiscación. A su vez, subrayó que el TPI erró al disponer de este caso sumariamente, aun cuando la Cooperativa no demostró la inexistencia de una controversia de hechos sobre que el Estado omitió notificarle la confiscación dentro del término que proveía el Artículo 13 de la *Ley de Confiscaciones, supra*, sec. 1724j.

Por su parte, el 24 de junio de 2025, la Cooperativa presentó su alegato ante este Foro, en el que planteó que la confiscación objeto de este recurso era nula al realizarse cerca de los noventa y ocho (98) días posteriores de la confiscación inicial. Adujo que el apelante emitió una aseveración estereotipada en la notificación de la confiscación. Asimismo, indicó que el ELA narró que estaba realizando una investigación que activaba la extensión del término de notificación, sin apoyarse con declaraciones juradas o prueba documental, tal como lo requería la Regla 36 de Procedimiento Civil, 32 LPRA Ap. V, R. 36. A la vez, manifestó que el apelante no evidenció la continuación y terminación de la investigación más allá del 14 de diciembre de 2023, fecha en que se presentaron denuncias contra el señor Cámara Vázquez. Ante ello, arguyó que se violó su debido proceso de ley al no conocer con certeza cuándo concluyó la investigación para comenzar a decursar el término jurisdiccional de notificación.

En atención al error señalado, procedemos a exponer la normativa jurídica aplicable a este recurso.

**II.**

**A. Sentencia Sumaria**

La sentencia sumaria es un mecanismo procesal que permite disponer un caso ágilmente, sin la celebración de un juicio, siempre que no se presenten controversias genuinas de hechos materiales. *Birriel Colón v. Econo y otro*, 213 DPR 80 (2023); *Segarra Rivera v. Int'l. Shipping et al.*, 208 DPR 964, 979 (2022); *SLG Fernández-Bernal v. RAD-MAN et al.,* 208 DPR 310, 334 (2021). Un hecho material es uno esencial y pertinente, que puede afectar el resultado de la reclamación, conforme al derecho sustantivo. Regla 36.1 de Procedimiento Civil, *supra*, R. 36.1; *Ramos Pérez v. Univisión*, 178 DPR 200, 213 (2010). Ahora bien, la controversia sobre el hecho material debe ser real, es decir, debe ser de una calidad suficiente que requiera ser dilucidada en un juicio plenario. *Íd.* Cónsono con lo anterior, procede dictar sentencia sumaria "si las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas si las hay, u otra evidencia demuestran que no hay controversia real sustancial en cuanto a algún hecho esencial y pertinente [...]". Regla 36.3(e) de Procedimiento Civil, *supra*, R. 36.3 (e); *Birriel Colón v. Econo y otro, supra; Meléndez González et al. v. M. Cuebas,* 193 DPR 100, 109 (2015); *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 430 (2013).

Por otra parte, la parte que se opone a la solicitud de sentencia sumaria deberá refutar los hechos materiales que entienda están en disputa con evidencia sustancial. *Birriel Colón v. Supermercado Los Colobos, supra; SLG Fernández-Bernal v. RAD-MAN* et al., *supra*, págs.336-337. Si la petición de sentencia sumaria está sustentada con declaraciones juradas u otra prueba, el oponente no puede descansar en meras alegaciones, sino que debe contestar con igual grado de especificidad y detalle que el promovente. Regla 36.3 (c) de Procedimiento Civil, *supra*, R. 36.3 (c); *Birriel Colón v. Econo y otro,*

*supra; Ramos Pérez v. Univisión, supra,* pág. 215. Empero, la ausencia de prueba para refutar la evidencia no conduce a la concesión automática de una moción de sentencia sumaria. *Birriel Colón v. Supermercado Los Colobos, supra; SLG Fernández-Bernal v. RAD-MAN et al., supra,* pág. 337.

En *Meléndez González et al. v. M. Cuebas, supra,* el Tribunal Supremo estableció el estándar que este Foro debe emplear al revisar la concesión o denegatoria de una solicitud de sentencia sumaria.

En primer lugar, este Tribunal se encuentra en la misma posición que el Foro Primario al revisar una solicitud de sentencia sumaria al estar llamado a realizar una revisión *de novo,* conforme con la Regla 36 de Procedimiento Civil, *supra,* R. 36. En tal ejercicio, no se puede considerar evidencia que no se presentó ante el Foro *a quo,* y se debe examinar el expediente de la forma más favorable hacia la parte opositora. *Íd., supra,* pág. 116.

En segundo lugar, este Tribunal debe revisar que tanto la petición de sentencia sumaria como su oposición cumplan con los requisitos de la Regla 36 de Procedimiento Civil, *supra,* R. 36 y los criterios discutidos en los casos *SLG Zapata- Rivera v. J.F. Montalvo, supra* y *Meléndez González et al. v. M. Cuebas, supra. Íd.*

En tercer lugar, este Foro apelativo debe revisar si en realidad existen hechos materiales en controversia. De haberlos, se debe exponer los hechos materiales en controversia y los incontrovertidos, a tenor con la Regla 36.4 de Procedimiento Civil, *supra,* R. 36.4. *Íd.*

En cuarto lugar, si este Tribunal determina que no existen hechos materiales en controversia, se procederá a revisar si el Foro Primario aplicó correctamente el derecho. *Íd.,* pág. 119.

### B. Notificación de confiscación

La confiscación es el acto del Estado en ocupar todo derecho de propiedad sobre bienes relacionados a fines ilícitos. *Reliable Financial v. ELA, supra,* pág. 296; *Centeno Rodríguez v. ELA,* 170 DPR

907, 912-913 (2007). Al ser un procedimiento de naturaleza *in rem*, las confiscaciones se sostienen y reafirman, independientemente de cualquier otra acción penal, administrativa o de cualquier otra naturaleza. *Universal Ins. y otro v. ELA y otros*, 211 DPR 455 (2011); R. Carrión Vargas, <u>*Confiscaciones en el Derecho Puertorriqueño*</u>, 1ra ed., San Juan, Ed. Bibliográficas, 2024, pág. 34.

La *Ley de Confiscaciones*, *supra*, es un estatuto confiscatorio que faculta al Estado para confiscar, entre otros, una propiedad que se haya utilizado, resultare o sea el producto de la comisión de delitos graves y menos graves que autoricen la confiscación, tipificados en el Código Penal de Puerto Rico, *supra*, así como en otras leyes especiales. Art. 9 de la *Ley de Confiscaciones*, *supra*, sec. 1724f. En particular, se autoriza la confiscación de todo vehículo que se haya utilizado para transportar bienes apropiados ilegalmente, robados, obtenidos mediante extorsión o de cualquier otra forma ilícita. R. Carrión Vargas, *op. cit.*, pág. 143.

Tal como emana de la *Ley de Confiscaciones*, *supra*, la política pública del Estado consiste en facilitar y agilizar el proceso de confiscación de bienes, a la vez que velar por los derechos y reclamos de las personas afectadas por este acto. Art. 2 de la *Ley de Confiscaciones*, *supra*, sec. 1724. Esta ley implementó un procedimiento expedito con requisitos estrictos aplicables tanto al Estado como a las partes con interés en la propiedad confiscada. *Reliable Financial v. ELA*, *supra*, pág. 298.

En tal sentido, el Estado cuenta con un período limitado de notificación para validar su actuación con el fin de garantizar el debido proceso de ley de las partes interesadas sobre el bien confiscado. *Íd.* El propósito de dicha notificación es salvaguardar sus derechos constitucionales y permitirles levantar defensas o argumentos en contra de la confiscación. *BBV v. ELA*, 180 DPR 681, 687 (2011); *Negrón v. Srio. de Justicia*, 154 DPR 79, 87 (2001). Al

respecto, el Artículo 13 de la *Ley de Confiscaciones, supra,* sec. 1724j, dispone lo siguiente referente a la notificación de la confiscación:

> El Director Administrativo de la Junta notificará la confiscación y la tasación de la propiedad confiscada a las siguientes personas:
> a) a la persona que tuviere la posesión física del bien al momento de la ocupación;
> b) a aquéllas que por las circunstancias, información y creencia, el Director Administrativo considere como dueños de dicho bien;
> c) en los casos de vehículos de motor, se notificará, además, al dueño, según consta en el Registro de Vehículos del Departamento de Transportación y Obras Públicas y al acreedor condicional que a la fecha de la ocupación tenga su contrato inscrito;
>
> [...]
>
> Toda confiscación se notificará por correo certificado dentro de un término jurisdiccional de treinta (30) días, siguientes a la fecha de la ocupación física de los bienes. La notificación se hará a la dirección conocida del alegado dueño, encargado o persona con derecho o interés en la propiedad, según consta del expediente de la confiscación.
>
> En el caso de vehículos de motor que sean ocupados en virtud de la Ley Núm. 8 de 5 de agosto de 1987, según enmendada, conocida como "Ley para la Protección de la Propiedad Vehicular" [9 L.P.R.A. §§ 3201 et seq.], la notificación se hará dentro de los treinta (30) días siguientes a partir del término de treinta (30) días dispuestos para que los oficiales del orden público lleven a cabo una investigación sobre el bien ocupado. Un vehículo ocupado al amparo de la "Ley para la Protección de la Propiedad Vehicular", no será confiscado a favor del Gobierno de Puerto Rico hasta tanto se culmine el procedimiento dispuesto en dicha Ley. El mismo se mantendrá bajo la custodia de la Policía hasta que se culmine la investigación correspondiente.
>
> **En aquellos casos en los que se incaute y retenga cualquier propiedad para alguna investigación relacionada con cualquier acción penal, civil, administrativa o cuando el bien es indispensable para la investigación o como evidencia en el caso, el término para culminar la investigación y emitir la orden de confiscación no excederá de noventa (90) días. Los treinta (30) días para notificar la confiscación comenzarán a contarse una vez concluya dicha acción y se expida la correspondiente orden de confiscación.** (Énfasis nuestro).

En términos generales, el Estado deberá cursar la notificación de la confiscación dentro de los treinta (30) días siguientes a la ocupación. *Reliable Financial v. ELA, supra,* pág. 299. No obstante, a modo de excepción, la Asamblea Legislativa estableció un período de notificación especial en dos (2) situaciones que justificaban la retención de la propiedad por un tiempo adicional debido a su conexión con otros procesos: cuando se incautó y retuvo para

propósitos investigativos relacionados a un caso civil, criminal o administrativo y cuando sirve como evidencia física en un caso. *Íd.*, págs. 299-300. En tal caso, el Estado cuenta con un término máximo de noventa (90) días para culminar la investigación relacionada a la propiedad incautada y expedir la orden de confiscación. *Íd.*, pág. 300. Tal término responde a la necesidad de establecer un plazo fijo para evitar que el NPPR retenga el bien por un tiempo indeterminado, previo a solicitar su confiscación. *Íd.*, pág. 301. En tal sentido, el Máximo Foro Judicial discutió lo siguiente:

> Por lo tanto, para el Estado poder justificar la retención de propiedad confiscada a base del último supuesto del Art. 13 de la Ley Núm. 119-2011, *supra*, es menester determinar si esa propiedad fue incautada y retenida con el propósito de asistir en alguna investigación concerniente a un caso. A esos efectos, deben cumplirse los siguientes requisitos. **Primeramente, que contemporáneamente o cercano a la incautación exista o se inicie algún tipo de investigación de naturaleza civil, penal o administrativa. De otra parte, que esa investigación esté de alguna manera vinculada a la razón para ocupar la propiedad incautada. En otras palabras, que el motivo inicial para intervenir y retener la propiedad sea relevante a la pesquisa.**
>
> Conforme esta disposición aparece redactada, no es suficiente aludir simplemente a una supuesta investigación en términos vagos y generalizados. El estatuto exige establecer, tanto la naturaleza de la investigación, como la necesidad de retener la propiedad para fines asociados a esa investigación.
>
> A tono con lo anterior, es preciso que la investigación a llevarse a cabo esté relacionada con la razón inicial para ocupar el automóvil. Por consiguiente, el Estado no puede justificar la retención una vez pasados los treinta (30) días, a base de eventos posteriores desconectados con la incautación inicial, tales como la inspección mandatoria decretada por la Ley Núm. 8, *supra.* [...] *Íd.,* pág. 302-303 (Énfasis nuestro).

Igualmente, el Tribunal Supremo consignó que la mejor práctica es revelar a los dueños y personas con interés los motivos investigativos para retener la propiedad lo más cercano posible a la incautación. *Íd.,* pág. 305. Asimismo, indicó que el Estado puede consignar fehacientemente en la orden de confiscación los fines investigativos que provocaron la retención de la propiedad. No obstante, "**[e]n ausencia de las comunicaciones antes mencionadas, una vez impugnada una notificación por tardía, si**

**el Estado interesa valerse del periodo de tiempo adicional […] por alegada ocupación para fines investigativos, le corresponde el peso de probar, mediante prueba fehaciente, la conexión entre el motivo para la ocupación de la propiedad retenida y la investigación correspondiente**". *Íd.*, pág. 306.

Tras esbozar la normativa jurídica aplicable, corresponde aplicarla a los hechos que nos conciernen.

**III.**

Como cuestión de umbral, estamos en la misma posición que el Foro Primario para revisar *de novo* la solicitud de sentencia sumaria, así como su oposición. Al no encontrar incumplimiento craso controversias reales y sustanciales en término de cumplimiento con los requisitos formales dispuestos en la Regla 36 de Procedimiento Civil, *supra*, R. 36 ni de hechos materiales, procederemos a revisar si el TPI aplicó correctamente el derecho.

En tal ejercicio, nos corresponde determinar si el TPI erró al conceder sumariamente la *Demanda* presentada por el apelado y la nulidad de la confiscación del vehículo Honda Passport del año 2022, al concluir que la notificación de confiscación se cursó fuera del término jurisdiccional dispuesto en el Artículo 13 de la *Ley de Confiscaciones, supra,* sec. 1724j. El Foro *a quo* entendió que el ELA debía notificar la confiscación dentro del término general de treinta (30) días contados a partir del 11 de diciembre de 2023 cuando el vehículo se ocupó. Concluyó que al haberse emitido la notificación el 11 de marzo de 2024, la misma se cursó fuera del término jurisdiccional y, por tanto, la confiscación era nula.

No obstante, tras realizar una revisión exhaustiva del expediente, en consideración con la normativa jurídica concerniente a los hechos de este caso, resolvemos que el Foro *a quo* se equivocó en la aplicación de la excepción dispuesta en el Artículo 13 de la *Ley de Confiscaciones, supra,* sec. 1724j.

El vehículo objeto del pleito se ocupó el 11 de diciembre de 2023 como parte de una investigación criminal por unos hechos delictivos de apropiación ilegal ocurrida el 4 de diciembre de 2023 en las inmediaciones de la tienda Home Depot de Ponce, en violación a los Artículos 182 y 184 del Código Penal de Puerto Rico, *supra*, secs. 5252 y 5256. A raíz de ello, se presentó una acusación en ausencia contra el señor Cámara Vázquez el 14 de diciembre de 2023 y se arrestó el 21 de diciembre del mismo año. Estos datos incontrovertidos establecen que, al momento de la ocupación, existía una investigación penal activa y vinculada al vehículo ocupado. Ello activó el término excepcional que reconoce el Artículo 13 de la *Ley de Confiscaciones, supra*, sec. 1724j, referente a la incautación de una propiedad para una investigación por una acción penal, civil o administrativa o cuando el bien es indispensable para la investigación o evidencia de un caso.

Es decir, el ELA disponía hasta noventa (90) días a partir de la ocupación para culminar la investigación y emitir la *Orden de Confiscación*. A partir de tal acción, tenía treinta (30) días para notificar la confiscación al dueño registral de la propiedad y a las partes con interés.

El expediente demostró que el ELA actuó dentro del término establecido por la *Ley de Confiscaciones, supra*, para notificar la confiscación. En concreto, tras la ocupación del automóvil el 11 de diciembre de 2023, el apelante culminó la investigación relacionada a los hechos delictivos y expidió la *Orden de Confiscación* el 27 de febrero de 2024, es decir, a los setenta y ocho (78) días de la ocupación, dentro del término de noventa (90) días que tenía para ello. Asimismo, la notificación de la confiscación se cursó el 11 de marzo de 2024, esto es, a los catorce (14) días desde que se emitió la *Orden de Confiscación*, dentro del término de treinta (30) días dispuesto por ley.

Por tanto, el ELA cumplió con ambos términos jurisdiccionales: (1) culminó la investigación y emitió la *Orden de Confiscación* dentro del término de noventa (90) días, y (2) notificó la confiscación dentro del término de treinta (30) días a partir de esa orden.

De otra parte, el TPI incurrió en error al concluir que el ELA no probó adecuadamente la conexión entre la ocupación y la investigación. Cabe destacar que, si bien en *Reliable Financial v. ELA*, *supra*, se indicó que la mejor práctica es revelar a los dueños y personas con interés los motivos investigativos para retener la propiedad lo más cercano posible a la incautación y que el Estado podía consignar fehacientemente en la orden de confiscación los fines investigativos que provocaron la retención, tal recomendación no constituyó un requisito de cumplimiento obligatorio. El propio Tribunal Supremo estableció que, en ausencia de dicha mejor práctica, una vez se impugnara la notificación y el Estado interesara valerse del período de noventa (90) días por ocupación para fines investigativos, le correspondía el peso de probar, mediante prueba fehaciente, la conexión entre el motivo para la ocupación de la propiedad y la investigación correspondiente.

En este caso, el Estado cumplió con dicha carga. El expediente contenía múltiples referencias que demostraron que desde el momento de la ocupación se desarrollaba una investigación de índole criminal vinculada con el uso del vehículo en la comisión de un delito. En específico, en los *Informes de Incidentes* emitidos los días 13 y 26 de diciembre de 2023 se explicó que la ocupación del vehículo respondió a su uso en unos hechos de apropiación ilegal y que la investigación estaba en curso. En la notificación de confiscación se indicó que el vehículo se ocupó y se retuvo para investigación y evidencia física por los aludidos hechos delictivos. Por otra parte, el ELA procedió con la presentación de cargos contra el señor Cámara Vázquez como parte de los hechos delictivos que motivaron la

ocupación. Además, no podemos soslayar que dentro del vehículo se encontró mercancía relacionada con otros incidentes de apropiación ilegal. A pesar de que el documento "Entrega Vehículo Tarde" explicó el retraso por causas personales del agente, este detalle no desvirtuó ni eliminó la existencia de una investigación penal activa, ni mucho menos la legalidad de la retención del vehículo durante el término permitido por ley.

Por tanto, el apelante cumplió su carga probatoria al establecer la relación entre la ocupación y la investigación, así como la necesidad de retener el automóvil como evidencia y objeto de investigación.

Por lo anterior, la actuación del ELA cumplió tanto con los requisitos sustantivos como con los plazos impuestos por la *Ley de Confiscaciones, supra.* Ante ello, se revoca la *Sentencia* apelada.

**IV.**

Por las razones que anteceden, se revoca la *Sentencia* apelada. Se devuelve el caso al TPI para la continuación de los procedimientos, de conformidad con esta determinación.

Lo acuerda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones